UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
GOVERNMENT EMPLOYEES INSURANCE : 
COMPANY, GEICO INDEMNITY :
COMPANY, GEICO GENERAL INSURANCE :
COMPANY, and GEICO CASUALTY :
COMPANY, :     REPORT AND
 :    RECOMMENDATION
              Plaintiffs, :
 :    22-CV-01553 (NGG) (PK)
       -against- :
 :
LIANA BINNS, N.P., et al., :
 :
              Defendants. :
------------------------------------------------------------ x

**Peggy Kuo, United States Magistrate Judge:**

      Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company (collectively, "GEICO" or "Plaintiffs") brought this action seeking to recover nearly $1 million for allegedly fraudulent no-fault insurance claims billed by Defendants to GEICO for medical services provided to victims of automobile accidents. (*See* Compl., Dkt. 1.) The Complaint alleges 139 causes of action for common law fraud, unjust enrichment, and civil RICO and civil RICO conspiracy to commit fraud.

      GEICO has moved for default judgment against Defendants Marie Lourdes Jean-Francois, N.P. ("Jean-Francois"), Dorrett Bryan, N.P. ("Bryan"), Priscilla Rose Santana, N.P. ("Santana"), Shernet Barrett, N.P. ("Barrett"), and Barbara Kerr, N.P. ("Kerr") (collectively the "Defaulting Defendants") pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. ("Motion," Dkt. 161.) The Honorable Nicholas G. Garaufis referred the Motion to me for a report and recommendation. For the reasons stated herein, I respectfully recommend that the Motion be granted.

1

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.     Factual Background**

The following facts are taken from the Complaint (Dkt. 1), Plaintiff's Memorandum in Support of Application for Default Judgment ("Pl. Mem.," Dkt. 161-10), and the Declarations of Joshua D. Smith ("Smith Decl.," Dkt. 161-1; "Second Smith Decl.," Dkt. 164) and Kathleen Asmus ("Asmus Decl.," Dkt. 161-3), and are accepted as true for purposes of the Motion.  *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (in light of a defendant's default, a court is required to accept all of plaintiff's factual allegations as true and draw all reasonable inferences in its favor).

**A.     *Nature of the Case***

New York's Comprehensive Automobile Insurance Reparations Act, N.Y. Ins. Law §§ 5101 *et seq.* (the "No-Fault law"), requires no-fault insurers, like GEICO, to reimburse patients for up to $50,000 in personal injury benefits without proof of fault of the other driver.  N.Y. Ins. Law §§ 5102, 5103.  Insured patients may assign claims for benefits to their healthcare provider to directly submit requests for payment to the insurance company.  11 N.Y.C.R.R. § 65-3.11(a).  To qualify for reimbursement payments under the No-Fault law, a healthcare provider must comply with all applicable licensing requirements for performing covered services.  *Id.* § 65-3.16(a)(12).  New York law prohibits, *inter alia*, the ownership or control of a medical practice by unlicensed individuals, fee-splitting arrangements among licensed and unlicensed individuals for the provision of professional services, and the payment or solicitation of kickbacks in exchange for patient referrals.  *See Gov't Emps. Ins. Co. v. Elmwood Park Med. Grp., P.C.*, No. 21-CV-617 (FB)(RER), 2022 WL 772737, at *2 (E.D.N.Y. Feb. 23, 2022), *R&R adopted*, 2022 WL 768360 (E.D.N.Y. Mar. 14, 2022) (citing N.Y. Educ. Law §§ 6509-a, 6512, 6530(11), 6530(18), 6530(19), 6531); *Gov't Emps. Ins. Co. v. Parkway Med. Care, P.C.*, No. 15-CV-3670 (FB)(VMS), 2017 WL 1133282, at *2 (E.D.N.Y. Feb. 21, 2017), *R&R adopted*, 2017 WL 1131901 (E.D.N.Y. Mar. 24, 2017).

Beginning in 2019, Defendants engaged in a scheme in which they submitted thousands of fraudulent no-fault insurance claims to GEICO relating to "medically unnecessary, illusory, and otherwise non-reimbursable healthcare services" allegedly provided to automobile accident victims in New York (the "Fraudulent Services"). (Compl. ¶ 1; Pl. Mem. 3–5; Smith Decl. ¶ 16.) Defendants are (1) unincorporated medical practices, (2) licensed healthcare professionals who falsely purported to own and control the medical practices, and (3) non-healthcare professionals who unlawfully owned and controlled the medical practices. (Compl. ¶ 4.)

GEICO alleges that the insurance claims submitted by Defendants were ineligible for reimbursement because they were based on services that were not medically necessary, were never provided in the first instance, or were exaggerated for the purpose of inflating the charges submitted to GEICO for reimbursement, *i.e.*, the Fraudulent Services. (*Id.* ¶ 3.) GEICO also alleges that the healthcare practices through which these insurance claims were billed were not owned by licensed healthcare professionals but were instead owned or controlled by unlicensed individuals and entities. (*Id.* ¶¶ 2–3.) Moreover, these healthcare practices were allegedly engaged in illegal fee-splitting with non-medical professionals and illegal referral arrangements in which kickbacks were paid for patient referrals. (*Id.* ¶ 3.) Thus, GEICO alleges these healthcare practices were ineligible for no-fault reimbursement payments from GEICO under the No-Fault law. (*Id.*) *See also* N.Y. Ins. Law § 5102(a)(1); 11 NYCRR § 65-3.16(a)(12).

B.   *The Defaulting Defendants*

Defaulting Defendants Jean-Francois, Bryan, Santana, Barrett, and Kerr are five licensed nurse practitioners who reside in and are citizens of New York. (Compl. ¶¶ 44, 52, 54, 68, 74.)

The Defaulting Defendants each falsely purported to own and control an unincorporated healthcare practice (Jean-Francois Medical, Bryan Medical, Santana Medical, Barrett Medical, and Kerr Medical, respectively) that was in actuality owned and controlled by unlicensed non-healthcare

3

professionals. (*Id.* ¶¶ 44–45, 52–55, 68–69, 74–75.) These medical practices were, thus, fraudulently licensed. (*Id.* ¶ 4.) Through these fraudulently licensed medical practices, Defaulting Defendants purported to provide many of the Fraudulent Services and knowingly submitted fraudulent claims for these services to GEICO. (*Id.* ¶¶ 3, 5, 44, 52, 54, 68, 74.)

GEICO submitted a "Claim Run" identifying all of the claims submitted to GEICO by Defaulting Defendants. (Ex. 2 to Asmus Decl., Dkt. 161-5.) GEICO alleges that it reimbursed Defaulting Defendants at least $112,258.59 for fraudulent claims. (Smith Decl. ¶ 26.) In support of this amount, GEICO submitted a Tax Identification Run ("TIN Run") identifying all of the payments which GEICO issued to the Defaulting Defendants.[1] (Ex. A to Second Smith Decl., Dkt. 164-1.) Of the claims GEICO has not yet paid, GEICO alleges at least $136,765.47 of payments are currently in legal dispute. (Smith Decl. ¶ 27.) In support of this amount, GEICO submitted a "Litigation and Arbitration Run" identifying all pending litigations and arbitrations filed against GEICO by Defaulting Defendants seeking payment. (Asmus Decl. ¶ 11; Ex. 3 to Asmus Decl., Dkt. 161-6.)

## II.   Procedural Background

GEICO filed the Complaint on March 21, 2022. (Dkt. 1.) Proof of service of a summons and the Complaint was filed with respect to each of the Defaulting Defendants. (Dkts. 28–30, 79, 112.) None of the Defaulting Defendants answered or appeared in the case. Upon GEICO's request, the Clerk of the Court entered Certificates of Default as to each of the Defaulting Defendants. (Dkts. 66, 71, 73, 105, and 121.) Certificates of Default for Kerr, Santana, and Jean-Francois were entered on May 24, 2022. (Dkts. 66, 71, 73.) A Certificate of Default for Bryan was entered on June 14, 2022. (Dkt. 105.) A Certificate of Default for Barrett was entered on July 18, 2022. (Dkt. 121.) GEICO filed its first motion for default judgment on August 4, 2022. (Dkt. 125.)

---

[1] The TIN Run initially filed by GEICO, attached to the Asmus Declaration as Exhibit 1 (Dkt. 161-4), contained incomplete data. (Second Smith Decl. ¶ 4.) The Court accordingly relies on the updated TIN Run filed as Exhibit A to the Second Smith Declaration. (*See* Dkt. 164-1.)

4

On August 17, 2022, Mark Furman, Esq. filed a notice of appearance on behalf of Defaulting Defendants Jean-Francois, Bryan, Barrett, and Kerr. (Dkts. 126–127.) No notice of appearance was ever filed on behalf of Defaulting Defendant Santana.

The Court was notified on January 17, 2023 that Mr. Furman, unfortunately, had passed away. (Dkt. 144.) In response, the Court scheduled a status conference for March 3, 2023 and directed GEICO to send a copy of the Court's scheduling order to Mr. Furman's former clients so that those clients would be aware of the conference. (January 18, 2023 Minute Entry; Dkt. 145.) Notices of appearances were thereafter filed on behalf of various of Mr. Furman's former clients, but no new attorney entered any notices of appearances on behalf of the Defaulting Defendants. (Dkts. 146, 149.)

The Court scheduled another status conference for April 14, 2023. (March 3, 2023 Minute Entry.) GEICO mailed a copy of the Court's scheduling order to all non-appearing Defendants, including the Defaulting Defendants. (Dkt. 150.) At that status conference, the parties updated the Court on their efforts to contact non-appearing Defendants formerly represented by Mr. Furman and confirmed that defense counsel had been provided with the last known contact information for all such Defendants. (April 14, 2023 Minute Entry.) The Court directed the parties to "continue to diligently attempt to contact all previously represented Defendants, including at their places of residence" and granted GEICO permission to file a motion for default judgment against any Defendants remaining in default as of May 12, 2023. (*Id.*) Although notices of appearance were filed on behalf of three additional defendants formerly represented by Mr. Furman, no notices of appearance were filed on behalf of the Defaulting Defendants. (Dkt. 152.) The Defaulting Defendants did not file any answer or responsive pleading or motion.

After settling with or voluntarily dismissing claims against various appearing Defendants, GEICO withdrew its pending motion for default judgment (Dkt. 157), and on June 28, 2023, filed the Motion, seeking default judgment against the Defaulting Defendants. (Dkt. 161.) GEICO seeks: (1)

a declaration, pursuant to 28 U.S.C. §§ 2201 and 2202, that they are not obligated to pay the Defaulting Defendants any of the pending bills for outstanding claims submitted to GEICO (First Cause of Action); (2) default judgments as to the common law fraud and unjust enrichment claims against the Defaulting Defendants (the Seventy-Second, Seventy-Third, Eighty-Eighth, Eighty-Ninth, Ninety-Second, Ninety-Third, One Hundred Twentieth, One Hundred Twenty-First, One Hundred Thirty-Second, and One Hundred Thirty-Third Causes of Action); and (3) damages and prejudgment interest on the common law fraud and unjust enrichment claims. GEICO does not seek default judgments against the Defaulting Defendants with respect to the civil RICO claims or civil RICO conspiracy claims brought pursuant to 18 U.S.C. §§ 1962(c) and (d).

## DISCUSSION

### I. Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for entry of a default judgment. First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default. Fed. R. Civ. P. 55(a). The plaintiff may then move the court for an entry of default judgment. Fed. R. Civ. P. 55(b)(2). "[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). The plaintiff must demonstrate proper service of the summons and complaint. *See Advanced Capital Commercial Group, Inc. v. Suarez*, No. 09-CV-5558 (DRH)(GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013). The plaintiff must also establish compliance with the procedural requirements of Local Civil Rules 7.1 and 55.2.

The court must determine whether Plaintiffs' "allegations establish [the defendant's] liability as a matter of law." *Finkel*, 577 F.3d at 84. "[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). In considering a motion for default judgment, a court accepts a plaintiff's

6

"factual allegations as true and draw[s] all reasonable inferences in [the plaintiff's] favor." *Finkel*, 577 F.3d at 84. However, a default is "not considered an admission of damages." *Greyhound*, 973 F.2d at 158. "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-6476 (ARR)(PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *R&R adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020).

A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established…" *Klideris v. Trattoria El Greco*, No. 10-CV-4288 (JBW)(CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *R&R adopted*, 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012).

## II. <u>Jurisdiction</u>

### A. *Subject Matter Jurisdiction*

Plaintiffs are Nebraska corporations with their principal place of business in Maryland, and all Defaulting Defendants are citizens of New York. (Compl. ¶¶ 10, 44, 52, 54, 68 74.) The matter in controversy exceeds $75,000. (*Id.* ¶ 9.) The Court accordingly has diversity jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(a) and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

### B. *Personal Jurisdiction and Service on Defendants*

"[S]erving a summons ... establishes personal jurisdiction over a defendant ... who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting Fed. R. Civ. P. 4(k)(1)(A).) New York State has general jurisdiction over its residents. *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 622 n.1 (2d Cir. 2016).

All Defaulting Defendants are residents of New York. Plaintiffs properly served the Summons

and Complaint on each of the Defaulting Defendants by leaving a copy of the Summons and Complaint with a person of suitable age and discretion at their homes and then mailing a copy to their last known addresses. (Dkts. 28, 29, 30, 79, 112.) *See* Fed. R. Civ. P. 4(e); N.Y.C.P.L.R. § 308(2).

The Court's personal jurisdiction over the Defaulting Defendants is, therefore, established.

### III. Procedural Compliance with Local Civil Rules 7.1 and 55.2

Plaintiffs filed the following in support of the Motion as required by the Local Civil Rules: Notice of Motion (Dkt. 161); a memorandum of law in support of the Motion (Dkt. 161-10); a proposed default judgment order (Dkt. 161-8); and proof of mailing the Motion papers to Defendants. (Dkt. 161-1 at 8.) Plaintiffs have also affirmed that the Defaulting Defendants are not infants, in the military, or incompetent persons. (Dkts. 161-2.) Thus, compliance with the Local Civil Rules is satisfied.

### IV. Liability

#### A. *Common Law Fraud Claims*

GEICO alleges common law fraud against each of the Defaulting Defendants. "To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Parkway*, 2017 WL 1133282, at *7 (citing *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 402 (2d Cir. 2015)).

GEICO has alleged that each of the Defaulting Defendants knowingly submitted fraudulent claims to GEICO for the Fraudulent Services that they purportedly provided through medical practices that they falsely purported to own and control. (Compl. ¶¶ 5, 44–45, 52–53, 54–55, 68–69, 74–75, 286–287.) The Complaint alleges that, in their claims to GEICO for the Fraudulent Services, the Defaulting Defendants knowingly misrepresented that the billed-for-services were medically

8

necessary and that their medical practices were properly licensed and eligible to receive no-fault benefits. (*Id.* ¶¶ 785, 893, 920, 1109, 1190.) GEICO alleges that the Defaulting Defendants submitted the fraudulent claims and provided the Fraudulent Services with the intent "solely to financially enrich the Defendants, rather than to treat or otherwise benefit the [i]insureds who purportedly were subjected to them." (*Id.* ¶ 5.) GEICO alleges that it reasonably relied on the fraudulent billing submitted by the Defaulting Defendants and could not have reasonably discovered the scheme due to its financial complexity and affirmative steps taken by the Defendants to conceal the scheme. (*Id.* ¶¶ 288–299.) Finally, GEICO has calculated that it has been injured in the amount of $112,258.59 in payments made to the Defaulting Defendants to which they are not entitled. (Smith Decl. ¶ 26.)

I find that GEICO's allegations are sufficient to establish common law fraud. (*See* Pl. Mem. at 10–11 (collecting similar cases).) *See also Parkway*, 2017 WL 1133282, at *7 (collecting cases).

### B. Unjust Enrichment Claims

To prevail on a claim of unjust enrichment, a plaintiff must "establish: (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Id.* (citing *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)).

GEICO alleges that the Defaulting Defendants benefited, in the amount of $112,258.59, at GEICO's expense. (Smith Decl. ¶ 26; TIN Run.) As described above, Defaulting Defendants submitted fraudulent bills seeking reimbursement to which they knew they were not entitled, and GEICO relied on the "facially-valid documents" and paid the bills promptly. (Compl. ¶ 298.) Because Defaulting Defendants were not entitled to that payment, GEICO has adequately pled that the payment was at its expense. *See Parkway*, 2017 WL 1133282, at *8 (collecting cases).

Equity and good conscience also require compensation because Defaulting Defendants received $112,258.59 in reimbursements from GEICO as a result of the fraudulent scheme, and "there

9

is no discernable reason why [Defaulting Defendants] should be rewarded for [their] fraud by being permitted to retain that windfall." *Id.*

### C. Declaratory Judgment

The Motion seeks entry of a declaratory judgment against Defaulting Defendants, pursuant to 28 U.S.C. §§ 2201 and 2202, which declares that GEICO has no obligation to make, and the Defaulting Defendants have no right to receive, payment for any claims submitted to GEICO that are still pending, because of fraudulent representations made in those claims. A court may exercise its discretion to issue a declaratory judgment in cases where the party seeking the declaratory judgment can demonstrate the existence of an actual case or controversy. "Declaratory relief is appropriate (i) where the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (ii) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings." *Parkway*, 2017 WL 1133282, at *9. "Courts within this district have, on numerous occasions, found these requirements met in actions by insurers seeking declaratory judgments regarding obligations relating to allegedly fraudulent claims." *Id.*

GEICO has established that an actual controversy exists and that a declaratory judgment would afford specific and conclusive relief with regard to claims submitted by the Defaulting Defendants which are still pending payment. GEICO has submitted a Litigation and Arbitration Run reflecting claims currently pending civil court collections litigation and New York State arbitrations initiated by or on behalf of the Defaulting Defendants against GEICO based on the Fraudulent Services. (Asmus Decl. ¶ 7; Litigation and Arbitration Run.) The Litigation and Arbitration Run indicates that the total amount of outstanding claims in dispute is at least $136,765.47. (Smith Decl. ¶ 27; Asmus Decl. ¶ 12; Litigation and Arbitration Run.)

GEICO has adequately alleged that these pending claims are fraudulent for the reasons stated above. Accordingly, GEICO has established that there is an actual controversy for which a declaratory

10

judgment would afford specific relief. (*See* Pl. Mem. at 9 (collecting cases)).

Accordingly, I respectfully recommend that the Court enter a declaratory judgment that GEICO is not obligated to pay any outstanding claims submitted by the Defaulting Defendants.

## V. Damages

Allegations related to damages are not deemed admitted upon entry of a default judgment. *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012). "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand*, 2020 WL 5519200, at *3.

### A. Common Law Damages

GEICO seeks reimbursement of the amounts that it has paid to Defaulting Defendants in connection with the fraudulent claims submitted by them. The TIN Run submitted by GEICO shows each payment GEICO made to Defaulting Defendants from August 5, 2019 to July 22, 2022. The TIN Run indicates that GEICO paid a total of $112,258.59 to the Defaulting Defendants as follows:

| Defaulting Defendant | Total Claims Paid by GEICO |
|---|---|
| Jean-Francois | $20,365.91 |
| Bryan | $54,073.26 |
| Santana | $3,334.70 |
| Barrett | $27,856.65 |
| Kerr | $6,628.07 |
| Total | $112,258.59 |

Accordingly, I respectfully recommend that GEICO be awarded **$112,258.59** in damages based on their common law fraud and unjust enrichment claims against Defaulting Defendants.

### B. Prejudgment Interest

GEICO also seeks prejudgment interest. Under New York law, an award of pre-judgment interest on damages awarded for fraud is mandatory. *See* N.Y.C.P.L.R. § 5001; *Manufacturers Hanover*

*Tr. Co. v. Drysdale Sec. Corp.*, 801 F.2d 13, 28 (2d Cir. 1986); *Parkway*, 2017 WL 1133282, at *17.

Prejudgment interest in New York accrues at the statutory rate of nine percent per year. N.Y.C.P.L.R. § 5004. "Where…damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." *Id.* § 5001(b). Courts have "wide discretion in determining a reasonable date from which to award pre-judgment interest." *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994).

GEICO's proposed prejudgment interest calculations are set forth at Exhibit C to the Smith Declaration. (Dkt. 161-7.) For each Defaulting Defendant, GEICO calculates prejudgment interest at an annual rate of 9% beginning from January 1 of the year following the year during which GEICO paid out the fraudulent claims. This methodology has been followed in this district in other no-fault insurance fraud cases awarding damages on default judgment. *See, e.g., Parkway*, 2017 WL 1133282, at *18.

I find that using January 1 following the year in which GEICO incurred damages as the start date for awarding prejudgment interest on those damages is a reasonable approach. The applicable interest rates for each Defaulting Defendant are accordingly set forth in the following table:

| Defaulting Defendant | Total Claims Paid by GEICO | Claims Paid by GEICO by Year | Year Claims Were Paid by GEICO | Start Date for Calculating Pre-Judgment Interest | Daily Interest Rate |
|---|---|---|---|---|---|
| Jean-Francois | $20,365.91 | $13,504.51 | 2020 | January 1, 2021 | $3.33 |
| | | $6,861.40 | 2021 | January 1, 2022 | $1.69 |
| Bryan | $54,073.26 | $29,957.61 | 2021 | January 1, 2022 | $7.39 |
| | | $24,115.65 | 2022 | January 1, 2023 | $5.95 |
| Santana | $3,334.70 | $3,334.70 | 2019 | January 1, 2020 | $0.82 |
| Barrett | $27,856.65 | $8,399.34 | 2021 | January 1, 2022 | $2.07 |
| | | $19,457.31 | 2022 | January 1, 2023 | $4.80 |
| Kerr | $6,628.07 | $6,628.07 | 2022 | January 1, 2023 | $1.63 |

Accordingly, I respectfully recommend that GEICO recover prejudgment interest at the daily rates set forth above.

## CONCLUSION

Based on the foregoing, I respectfully recommend that the Motion be granted and that damages and prejudgment interest be awarded to GEICO as follows:

- Against Defendant Jean-Francois, $20,365.91 in damages plus $3.33 daily interest from January 1, 2021 through judgment and $1.69 daily interest from January 1, 2022 through judgment;

- Against Defendant Bryan, $54,073.26 in damages plus $7.39 daily interest from January 1, 2022 through judgment and $5.95 daily interest from January 1, 2023 through judgment;

- Against Defendant Santana, $3,334.70 in damages plus $0.82 daily interest from January 1, 2020 through judgment;

- Against Defendant Barrett, $27,856.65 in damages plus $2.07 daily interest from January 1, 2022 through judgment and $4.80 daily interest from January 1, 2023 through judgment;

- Against Defendant Kerr, $6,628.07 in damages plus $1.63 daily interest from January 1, 2023 through judgment.

Any written objections to this Report and Recommendation must be filed within 14 days of service of this report.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation.  *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated:  Brooklyn, New York
        March 14, 2024